IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LESHIA I. ROBINSON-JONES, :
:
       Plaintiff, :
:
v. : Civil Action No. 11-1206-RGA
:
MICHAEL J. ASTRUE, :
Commissioner of Social Security, :
:
       Defendant. :

## MEMORANDUM OPINION

Leshia I. Robinson, New Castle, Delaware. Pro se Plaintiff.

Charles M. Oberly III, United States Attorney, Wilmington, Delaware and Patricia A. Stewart, Special Assistant United States Attorney, Philadelphia, Pennsylvania. Counsel for Defendant.

Dated: November 30, 2012
Wilmington, Delaware

[signature: Richard G. Andrews]
ANDREWS, UNITED STATES DISTRICT JUDGE:

Plaintiff Leshia Robinson-Jones appeals the denial of her applications for disability insurance benefits ("DIB") under Title II, and supplemental security income benefits ("SSI") under Title XVI, of the Social Security Act (the "Act"). 42 U.S.C. §§ 401-434, 1381-1383f. Jurisdiction exists pursuant to 42 U.S.C. § 405(g).

Pending before the Court are cross-motions for summary judgment filed by Robinson and Michael J. Astrue, Commissioner of Social Security. For the reasons set forth below, the Court denies Robinson's motion for summary judgment and grants the Commissioner's motion for summary judgment.

I.  **Procedural History**

Robinson filed DIB and SSI applications in February 2006. The final decision of the Commissioner dated August 6, 2008, denied Robinson's claims. She appealed the Commissioner's final decision to this Court.[1] *See Robinson v. Astrue*, Civ. No. 10-588-LPS (D. Del. Mar. 28, 2012). On March 28, 2012, judgment was entered in favor of the Commissioner and against Robinson. (*Id.* at D.I. 34.) Robinson did not appeal this judgment. Therefore, the principles of res judicata apply to Robinson's claims of disability through August 6, 2008.

In July and August 2008, Robinson filed applications for DIB and SSI alleging disability as of November 2003. (D.I. 12, transcript ("Tr.") 17, 80-86.) Robinson was forty-eight years old at the onset of the alleged disability. She alleges disability as a result of back and neck injury, vision problems, emotional stress, asthma, and chronic obstructive pulmonary disease ("COPD"). (D.I. 12, Tr. 107.) The claims were denied initially and upon reconsideration. (*Id.* at 17, 41-45.) Thereafter, Robinson requested a hearing which took place before an administrative law judge

---

[1] Counsel represented Robinson during the appeal.

("ALJ") on October 5, 2010. Counsel represented Robinson at the hearing, and Robinson and a vocational expert ("VE") testified. (D.I. 13, Tr. 1047-1072.) During the administrative hearing, Robinson, through counsel, amended the alleged disability onset date to August 7, 2008. (*Id.* at 1053.) The ALJ found that Robinson met the insured status requirements of the Act through December 31, 2008, that she was not under a disability at any time through the date she was last insured and, that she was not disabled prior to July 28, 2010, but, became disabled on that date. (D.I. 12, Tr. 17-28.) Robinson sought review by the Appeals Council, but it denied her request for review and, therefore, the ALJ's decision became the final agency decision subject to judicial review. (*Id.* at 6-8.) On December 7, 2011, Robinson, proceeding *pro se*, filed the current action for review of the final decision. (D.I. 1.)

## II. Medical Evidence

On November 12, 2003, Robinson fell backwards over a step stool while at a laundromat, causing her to twist and fall flat on her back onto a cement floor. (*Id.* at 327.) In July and October of 2007, Robinson began treatment with Dr. Peter B. Bandera who confirmed a prior diagnosis of cervical/lumbar syndrome with strain/sprain/radiculopathy, bilateral knee blunt contusion with chondromalacia patella, bilateral wrist strain/sprain, continued a home rehabilitation program, and prescribed Percocet. (*Id.* at 322-23.) In February 2008, Robinson began seeing Dr. Michael Schettino for problems that include a herniated cervical disc, sciatica, unstable angina, COPD, hypertension, and an abnormal right breast mass. (D.I. 13, Tr. 541-606.) Dr. Schettino prescribed physical therapy which provided minor improvement in the neck pain, and only minimal relief of her arm symptoms.

2

Robinson received physical therapy between May and October 2008 for neck and right arm pain. (D.I. 12, Tr. 487-525, 527; D.I. 13, Tr. 600-05.) She received additional physical therapy in September 2008 for lower back complaints. (*Id.* at 486, 526.) An August 2008 MRI of the lumbar spine revealed congenital lumbar stenosis, disc desiccation at T11-12 with small central disc protrusion; mild central stenosis at L2-3 and L3-4 with mild bilateral foraminal stenosis at both levels; mild central stenosis at L4-5 and disc bulging at L5-S1 slightly contacting the thecal sac and causing slight central stenosis. (D.I. 13, Tr. 550.) An MRI of the cervical spine, also taken in August 2008, revealed a sizable central disc herniation at C4-5, and small disc protrusion centrally at C5-6. (*Id.* at 551.) Dr. Schettino's October 3, 2008 notes refer to Robinson's cervical and lumbar pain on a five to six level and that she takes Percocet for the pain. (*Id.* at 542.)

Social worker, Nancy M. Ball, began seeing Robinson in August 2007 and last saw her in October 2008. (*Id.* at 607.) In assessing Robinson's ability to perform mental work-related functions, Ball stated that Robinson "can care for person; depressed mood so she doesn't like to be around others; poor adjustment skills; poor focus." (*Id.* at 610.) Ball's treatment notes indicate that Robinson did not feel depressed. (*Id.* at 1005.) Treatment notes from Christiana Care Family Medicine for the period August 2008 to October 2008 reflect that Robinson denied depression, insomnia, or anxiety, and that she was alert and cooperative, with a normal mood and affect, and normal attention span and concentration. (*Id.* at 548, 554.)

In October 2008, Robinson received follow-up care for Hippel-Lindau disease[2] from ophthalmologist Dr. Erwin D. Suh. (*Id.* at 536.) Upon examination, Robinson's right eye visual acuity was "count fingers" and left eye visual acuity was 20/20 with correction. (*Id.*) Dr. Suh's impression was Hippel-Lindau disease, history of presumed retinal capillary hemangioma of the macula of the right eye with macular scar (and laser treatment), some vitreous syneresis in the left eye, and some allergic conjunctivitis and possible ocular migraines. (*Id.*) Robinson was given a prescription for glasses, and advised to follow-up in one year, or sooner if needed. (*Id.*)

Robinson was surgically treated for a hammer toe of the fifth toe, left foot, in November 2008. (*Id.* at 628, 739.) She underwent a left heart catheterization in December 2008, which showed non-obstructive coronary artery disease with thirty to thirty-five percent proximal left anterior descending artery and twenty to twenty-five percent proximal mid-circumflex, and normal left ventricular function with ejection fraction approximately fifty-five to sixty percent. (*Id.* at 748-49.)

A state agency physician reviewing Robinson's claim for benefits in January 2009 opined that Robinson had the physical residual functional capacity ("RFC") to perform light work with occasional postural maneuvers (except never climbing ladders/ropes/scaffolds); avoiding concentrated exposure to extreme cold, vibration, and fumes, odors, dusts, gases, poor ventilation, etc.; and avoiding even moderate exposure to hazards such as machinery and heights. (*Id.* at 758-65.) A state agency psychologist reviewing Robinson's claim for benefits in January

---

[2]A hereditary disease characterized by hemangiomas of the retina, the cerebellum and occasionally the spinal cord, and also sometimes associated with cysts or hamartomas of the kidney, adrenal glands, or other organs. *The American Heritage Stedman's Medical Dictionary* 462 (2d ed. 2004).

4

2009 opined that Robinson did not have a severe mental impairment. (*Id.* at 766.) A second state agency psychologist reviewing Robinson's claim for benefits in May 2009 also opined that Robinson did not have a severe mental impairment. (*Id.* at 887.)

In March 2009, Robinson underwent a C4-5 cervical discectomy and fusion with autograft and instrumentation. The surgery was performed by Dr. Kennedy Yalamanchili. (*Id.* at 879-886.) Dr. Yalamanchili reported in April 2009 that Robinson was recovering very well from the surgery, and he recommended a course of physical therapy. (*Id.* at 879, 928, 1036.) He indicated that Robinson that could gradually resume normal activities such as driving, but to avoid heavy lifting and repetitive above-the-shoulder activity. (*Id.* at 879.) As of June 12, 2009, Robinson was well-healed from the surgery. (*Id.* at 1045.) Again, Dr. Yalamanchili advised her to limit heavy lifting and repetitive above-the-shoulder activity. (*Id.*) She reported some neck pain that was controlled with medication. (*Id.*) When Robinson presented to Dr. Yalamanchili on September 16, 2009, she reported symptoms of the neck and lower back pain, progressively worsening. (*Id.* at 1044.) The sharp back pain radiated to bilateral lower extremities, left greater than right, and was localized to the back of the thigh. She also reported numbness in her feet bilaterally. (*Id.*) Robinson rated the back pain as seven out of ten and the neck pain as five out of ten. In addition, she complained that numbness had returned to all fingers and there was burning on the dorsal aspect of her hands, mainly on the left. (*Id.*)

An MRI of Robinson's cervical spine performed in October 2009 showed status post C4-5 anterior cervical discectomy and fusion, mild cord atrophy and myelomalacia, and mild disc bulges at C5-6 and C6-7 without foraminal compromise. (*Id.* at 1041.) An October 2009 MRI of Robinson's lumbar spine revealed congenital spinal stenosis at the L2-3, L3-4, and L4-5 levels;

5

left-sided foraminal protrusion at the L2-3 level potentially affecting the left L2 root; and T11-12 moderate right disc herniation slightly compressing the cord. (*Id.* at 902-03.) Robinson underwent EMG/nerve conduction studies of both hands in October 2009, the results of which were consistent with mild bilateral carpal tunnel syndrome, but no definite diagnostic evidence of active denervation, ulnar neuropathy, peripheral polyneuropathy, plexopathy, radiculopathy, or myopathy. (*Id.* at 905.)

When Robinson presented to Dr. Yalamanchili on November 6, 2009, she complained of numbness and pain involving both hands with the numbness more present when she is active and using her hands. (*Id.* at 1043.) Robinson also described lower back pain. She was stable upon physical examination. Dr. Yalamanchili advised Robinson that she was a good candidate for pain management and a trial of steroidal injunctions, but Robinson did not wish to consider the treatment. Dr. Yalamanchili offered Robinson a course of physical therapy that she intended to pursue. Dr. Yalamanchili also discussed with Robinson that she undergo surgical release of the carpal tunnel. Dr. Yalamanchili reported, "at present, she is satisfied with managing her symptoms." (*Id.*)

In April 2010, Robinson was involved in an automobile accident. (*Id.* at 953.) She received physical therapy for complaints of back pain thru August 2010, after which she reported some improvement. (*Id.* at 938, 942, 945, 950, 1010-1037.)

### III. Administrative Hearing

#### A. Robinson' testimony

Robinson was fifty at the time of the October 5, 2010 administrative hearing. (*Id.* at 1054.) She lives alone and has a driver's license. (*Id.* at 1057.) She previously worked for

Cigna Insurance Company as a customer service representative for twenty-five years until she was laid off due to the relocation of Cigna. (D.I. 13, Tr. 1054-55.) Later, Robinson was employed part-time at the Port of Wilmington until she fell and injured her back in 2003. (*Id.* at 1055.) She has not worked since the accident, but did complete an associates degree in criminal justice. (*Id.* at 1054.)

Robinson has had neck problems since 2003. (*Id.* at 1059.) Prior to her 2009 surgery, Robinson had numbness, sharp pain, and burning, consistently twenty-four/seven. (*Id.* at 1060.) The neck pain in 2008 affected the length of time that Robinson could sit, her ability to use her hands and arms in that she could not write, use a computer, brush or comb her hair, or lift her arms without pain. (*Id.* at 1060-62.) In addition, the neck pain and arm problems affected her daily functioning. (*Id.* at 1061.) It was difficult for her to dress, drive, go the bathroom, sit up and watch television, eat, and do just about anything. (*Id.*)

Robinson also had low back problems in 2008 that included radiation down her leg, numbness, back pain, cramping, and shooting stabbing pain. (*Id.* at 1062.) It was difficult and painful for her to move, stand, sit, bend, and drive because she could not turn the trunk of her body. (*Id.* at 1062-1063.) The results of the 2009 surgery were successful for a few months, but the symptoms gradually returned. (*Id.* at 1062.) As of the date of the hearing, Robinson continued to have back problems and her symptoms continue to worsen. (*Id.* at 1063.)

In 2008, Robinson was able to walk, sit and stand for fifteen to twenty minutes, but she continued to have numbness and pain and would take a break, try to walk about one-half hour, return and then lie down from anywhere to fifteen to twenty minutes to two to three hours. (*Id.* at

7

1067.) As of the date of the hearing, she continued with the same problems. (*Id.* at 1068.) It is painful for her to walk up and down stairs. (*Id.* at 1069.)

Robinson was restricted in the use of her hands in 2008, and the restriction continued to the date of the hearing. (*Id.* at 1069.) She can lift five pounds, but cannot carry that much. (*Id.*) She is weak in the arms, but uses a computer on occasion. (*Id.* at 1069-70.) She does limited cooking and light cleaning, and in 2008 did less than she does now. (*Id.* at 1057, 1070.)

In 2008, Robinson went to church on a weekly basis and socialized with family, and volunteered with a church group, one hour per week. (*Id.* at 1070-71.) She testified that in 2008 she was unable to work due to the issues with the use of her hands, legs, sitting, and neck spasms. (*Id.*) She was ineffective in her ability to get ready for work. (*Id.*) In addition, the medication she was taking did not allow her to focus. (*Id.*) Current side effects from the medication Robinson takes include constipation, problems with balance, and forgetfulness. (*Id.* at 1066-67.)

Robinson did not sleep well prior to having the neck surgery. (*Id.* at 1065.) Following the surgery she slept better, but now that the symptoms have returned she is not sleeping well. (*Id.*) Robinson received treatment for depression on a routine basis and, for a time, was on anti-depressants. (*Id.* at 1064.)

Robinson testified that, due to Von Hippel disease, she has very little peripheral vision of the right eye. (*Id.* at 1066.) In addition, she has floaters in the left eye. (*Id.*) The eye problems can be distracting. (*Id.*)

Robinson was in an automobile accident in April 2010. At the time she had just been released from therapy, but the accident "took her right back to where she was." (*Id.* at 1065.)

8

### B. The Vocational Expert

At the administrative hearing, the ALJ asked the VE to identify jobs that a hypothetical individual might be able to perform assuming an individual of Robinson's age, education, and experience, who was restricted to simple, routine, sedentary work[3], which allows for the ability to occasionally change positions for the relief of postural discomfort, which does not involve constant use of the upper extremities, and which does not require exposure to excessive pulmonary irritants. (*Id.* at 1074.) The vocational expert testified that, despite those limitations, such an individual could perform sedentary work as a type copy examiner, surveillance system monitor, and document scanner. (*Id.*) The vocational expert further testified that the document scanner position would require frequent use of the hands, but that the type copy examiner and surveillance system monitor positions required only occasional use of the hands. (*Id.* at 1076.)

### IV. Standard of Review

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence does not mean a large or a considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Rather, it has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

---

[3]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

9

Credibility determinations are the province of the ALJ, and should be disturbed on review only if they are not supported by substantial evidence. *Pysher v. Apfel*, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). Thus, the inquiry is not whether the Court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). In social security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to Fed. R. Civ. P. 56(c). *See Woody v. Secretary of the Dep't of Health & Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

## V. Regulatory Framework

Within the meaning of social security law, a "disability" is defined for purposes of DIB as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." *See* 20 C.F.R. § 404.1505. The claimant bears the initial burden of proving disability. *See* 20 C.F.R. §§ 404.1512(a), 416.905; *Podeworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984). To qualify for disability insurance benefits, the claimant must establish that he was disabled prior to the date he was last insured. *See* 20 C.F.R. §§ 404.131, 416.912(a); *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

To determine disability, the Commissioner uses a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). "The

10

claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five. *Smith v. Commissioner of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4) (mandating a finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (requiring finding of not disabled when claimant's impairments are not severe). If claimant's impairments are severe, at step three the Commissioner, compares the claimant's impairments to a list of impairments (the "listing") that are presumed severe enough to preclude any gainful work.[4] *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(d), 416.920(e).[5]

---

[4]Additionally, at steps two and three, claimant's impairments must meet the duration requirement of twelve months. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii-iii), 416.920(a)(4)(ii-iii).

[5]Prior to step four, the Commissioner must assess the claimant's RFC. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment[s]." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Burnett v. Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 121

At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating a claimant is not disabled if able to return to past relevant work). "The claimant bears the burden of demonstrating an inability to return to [his] past relevant work." *Plummer*, 186 F.3d at 428. If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating that a claimant is not disabled if the claimant can adjust to other work); *Plummer*, 186 F.3d at 428. As previously stated, at this last step the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with his medical impairments, age, education, past work experience, and [RFC.]" *Id.* This determination requires the Commissioner to consider the cumulative effect of the claimant's impairments and a vocational expert is often consulted.

At step one, the ALJ found that Robinson met the insured status requirements of the Social Security Act through December 31, 2008, and that she had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found that Robinson has the severe impairments of degenerative disc disease, hypertension, hypothyroidism, COPD, sleep apnea, depression, obesity, and carpal tunnel syndrome. At step three, the ALJ determined that Robinson's impairment does not meet or medically equal the listing criteria. The ALJ found that

---

(3d Cir. 2000)).

12

Robinson had the RFC to perform sedentary work, except that she is limited to simple routine unskilled work, should not require constant use of the upper extremities, should be afforded a sit/stand option, and should not involve excessive exposure to pulmonary irritants. At step four, the ALJ determined that Robinson could not perform her past relevant work. At step five, the ALJ concluded that prior to July 28, 2010, considering Robinson's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed, directing a conclusion that she was not disabled prior to July 28, 2010 and was not under a disability within the meaning of the Act at any time through the date she was last insured. The ALJ further concluded that beginning on July 28, 2010, the date Robinson' age category changed and considering her age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that she could perform, directing a finding that she became disabled on July 28, 2010 and continued to be disabled through the date of the ALJ's decision.

## VI. Whether the ALJ's Decision is Supported by Substantial Evidence

Robinson seeks a remand and/or an award of benefits on the grounds that: (1) the Commissioner erred as a matter of law in failing to accord adequate weight to the opinion and assessment of her long-time treating physician, Dr. Ronald Goodman; (2) the Commissioner relied upon a hypothetical question that was deficient as a matter of law and not supported by substantial evidence; (3) the Commissioner erred in failing to resolve the conflicts between the vocational expert testimony and the Dictionary of Occupational Titles; and (4) the Commissioner failed to sustain his burden of establishing that there is other work in the national economy that she can perform. (D.I. 15.)

13

The Commissioner contends that substantial evidence supports his decision that Robinson was not disabled prior to July 2010 and the decision should be affirmed. (D.I. 18.) He notes that Robinson raised no new issues in her Motion for Summary Judgment and that she filed a brief identical to that filed in her previous action, Civ. No. 10-588-LPS-MPT. The Court agrees that Robinson's initial brief fails to raise new issues. It does, however, include three additional pages of relevant medical evidence at 6a through 6c. (*See* D.I. 15.) The Court will not readdress the issues raised by Robinson and previously ruled upon by this Court. Robinson, however, raises a new issue in her opposition to the Commissioner's motion for summary judgment: that substantial evidence does not support the ALJ's finding that she had both the physical and mental RFC to perform a limited range of simple, routine sedentary work prior to July 2010.

In support of his motion, the Commissioner argues that: (1) Dr. Yalamanchili, Robinson's treating physician, only advised her to avoid heavy lifting and repetitive above-the-shoulder activity; (2) a state agency physician reviewing Robinson's claim for benefits opined that she could perform a limited range of light work; and (3) Robinson's mental complaints are not disabling as two state agency psychologists opined that she did not have a severe impairment.

Robinson argues that the ALJ failed to consider that she had injuries to her neck, hands and back prior to March 2009, she has been in severe pain, has been accepted to a pain management clinic, has had numbness on a consistent basis despite having surgery, and continues to receive physical therapy. She argues that when Dr. Yalamanchili indicated she could resume normal activities, this applied to the neck only as there was evidence of moderate thoracic disc disease in the lumbar spine and mild lumbar disc disease. She argues that the ALJ did not consider her Vitamin D deficiency diagnosis. In addition, she argues that her mental

complaints were disabling despite two state agency psychologists who opined that she did not have a severe impairment. She argues that the ALJ did not take into consideration the statements of Ms. Ball, a licensed clinical social worker, or the notes of Frederick Kurz, Ph.D.[6] Finally, Robinson contends that the VE's testimony that she could perform certain jobs conflicts with the Dictionary of Occupational Titles ("DOT").

The ALJ's RFC assessment is supported by substantial evidence. Dr. Yalamanchili, who performed Robinson's cervical discectomy and fusion in March 2009, advised her in April 2009 only to avoid heavy lifting and repetitive above-the-shoulder activity. As of the last date she saw Robinson, in November 2009, Robinson was satisfied with managing her symptoms. Notably, when a state agency physician reviewed Robinson's claim for benefits in January 2009, he opined that she had the physical residual functional capacity to perform light work with occasional postural maneuvers (except never climbing ladders/ropes/scaffolds); avoiding concentrated exposure to extreme cold, vibration, and fumes, odors, dusts, gases, poor ventilation, etc.; and avoiding even moderate exposure to hazards such as machinery and heights.

With regard to Robinson's mental complaints, the ALJ was not required to accept social worker Ball's assessment. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a); *Diaz v. Shalala*, 59 F.3d 307, 312-14 (2d Cir. 1995) (A social worker's opinion is not entitled to deference because it does not qualify as a "medical opinion" under the Commissioner's long-standing regulations.); *cf.*

---

[6]Robinson states that Dr. Kurz's notes indicate Robinson suffers from depression and spousal relation disorder and that her attention, short-term memory due to pain, and depression affect her ability to perform unskilled work. The Court does not consider the argument regarding Dr. Kurz' opinions. His records were not submitted for consideration by the Commissioner and are not contained in the record. They were submitted in Robinson's prior applications for DIB and SSI and considered in *Robinson v. Astrue*, Civ. No. 10-588-LPS-MPT.

*Hartranft v. Apfel*, 181 F.3d 358, 462 (3d Cir. 1999) (a chiropractor's opinion is not an acceptable medical source entitled to controlling weight). In addition, Ball's November 2008 opinion is inconsistent with contemporaneous notes wherein Robinson reported that she did not feel depressed. Further, other contemporaneous treatment notes from Christiana Care Family Medicine for the period August 2008 to October 2008, reflect that Robinson denied depression, insomnia, or anxiety, and that she was alert and cooperative, with a normal mood and affect, and normal attention span and concentration. Finally, Ball's opinion is contradicted by two state agency psychologists who reviewed Robinson's claim for benefits in January 2009 and May 2009, respectively, both of whom opined that she did not have a severe mental impairment. Based upon the record, the ALJ had substantial evidence from which he could reasonably conclude that Robinson could perform a modified range of sedentary work.

Finally, Robinson's argument that the VE's testimony conflicted with the DOT is unpersuasive. Robinson mistakenly argues that the VE opined that she could perform the jobs of inspector (669.687-014), small parts inserter (734.687-034), and table worker (739.687-182).[7] During the October 5, 2010 administrative hearing, the VE testified that Robinson could perform DOT jobs of copy examiner (979.687-026), surveillance system monitor (379.367-010), and document scanner (249.587-018). The VE testified that the positions of copy examiner and surveillance system monitor require the occasional use of hands, while the document scanner position requires the frequent use of hands.

---

[7]The testifying VE in Robinson's prior applications for DIB and SSI provided this testimony. *See Robinson v. Astrue*, Civ. No. 10-588-LPS-MPT.

According to the policy interpretation under SSR 00-4p, any occupational evidence presented by the VE should be consistent with the DOT. SSR-00-4p, 2000 WL 1898704 (Dec. 4, 2000). The Third Circuit, however, has "'not adopt[ed] a general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal.'" *Jones v. Barnhart*, 364 F.3d 501, 506 n.6 (3d Cir. 2004). If the conflict is minimal in that the limitations still qualify a claimant for the position as listed in DOT, then remand is not warranted. *Tisoit v. Barnhart*, 127 F. App'x 572, 575 n.1 (3d Cir. 2005).

Contrary to the VE's testimony, the positions of copy examiner and document scanner require frequent reaching, handling, and fingering. *See* DICOT 979.687-026, Copy Examiner, 1991 WL 688696; DICOT 249.587-018, Document Preparer, Microfilming, 1991 WL 672349. The DOT description of the surveillance-system monitor job, however, does not require reaching, handling, fingering, or feeling. *See* DICOT 379.367-010, Surveillance-System Monitor, 1991 WL 673244. Thus, even assuming Robinson could only perform this one job, there are sufficient numbers of this job in the national economy to satisfy the fifth step of the disability analysis to support the ALJ's reliance upon the VE's testimony and a remand is not warranted.

The Court therefore concludes that the ALJ's determination, that Robinson could perform a modified range of sedentary work and that prior to July 28, 2010, considering her age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed, and that she was not disabled prior to July 28, 2010 and not under a disability within the meaning of the Act at any time through the date she was last insured, is supported by substantial evidence.

## VII. CONCLUSION

For the reasons discussed above, Robinson's motion for summary judgment (D.I. 15) is denied and the Commissioner's cross-motion for summary judgment (D.I. 18) is granted.

An appropriate order will be entered.